Davis v. Benedict.

EDWIN DAVIS, SR., V. EMERSON BENEDICT.

FILED SEPTEMBER 16, 1896.   No. 6770.

Landlord and Tenant: EXPENSES OF IMPROVEMENT: EVIDENCE: ADMISSIBILITY OF LEASE. By the terms of a lease the lessee was required during the term to pay for all necessary expenses and improvements. The lessee procured to be made certain repairs during the term by one who sought to recover against the lessor, as principal, upon a contract for repairs alleged to have been made with the lessee acting as agent for the lessor. Held, That there was error in excluding from consideration as evidence the lease, which tended to sustain the theory of the defendant.

ERROR from the district court of Douglas county. Tried below before DAVIS, J.

John W. Lytle, for plaintiff in error.

Bradley & De Lamatre, contra.

RYAN, C.

On April 24, 1889, Edwin Davis leased a livery and feed barn in Omaha to Charles J. Mentor for a term of

ten years, commencing May 1, immediately following the date of the lease. In this lease it was provided that during its existence Mentor was required to make all repairs and improvements which should be necessary or which he should desire at his own expense and pay a monthly rental of $250 per month. In November, 1891, it became necessary to cement the floor and a portion of the walls of one room to prevent leakage, and this was done by Emerson · Benedict, who in this action, first brought before a justice of the peace of Douglas county, sought to recover compensation for his services and outlay in that behalf. On appeal to the district court of said county there was a verdict and a judgment thereon in the sum of $168.48 against Davis, who by proceedings in error seeks the reversal of this judgment.

The averments of the petition were that Davis, by his agent, Mentor, agreed that plaintiff, Benedict, should furnish the material for and do the labor necessary for the sum of $180, which sum was to be paid by Mr. Davis upon completion of the work. These allegations were followed by averments of the due performance of the work contracted for and of non-payment. The prayer was for judgment for $180 and interest from completion of the job. The answer specifically denied the agency of Mentor, and in general terms denied each other averment of the petition. On the trial the pivotal question was whether or not Mr. Davis had authorized Mr. Mentor on his behalf to contract with Mr. Benedict. This authority Mr. Davis strenuously denied. Mr. Benedict testified that his employment was by Mr. Mentor, who claimed that he had authority from Mr. Davis to contract in his name for the improvements. The testimony of Mr. Mentor was that he obtained a bid to be made by Mr. Benedict for doing the proposed work; that he submitted this bid, with others, to Mr. Davis, who selected and directed that the bid of Mr. Benedict should be accepted. After the approval of the bid of Mr. Benedict, Mr. Davis asked Mr. Mentor who was going to pay, and being an-

swered that Mr. Mentor ought not to, Mr. Davis replied that it was not his business to do it.    Between these parties it was finally agreed that Mr. Davis would pay $150 and Mr. Mentor would pay $30.    Continuing his testimony, on cross-examination Mr. Mentor said: "Well, he [Davis] told me, he says, 'I will give you a note the first of the month for this amount of money and you take it to your bank and get the money and give it to Mr. Benedict and when it comes due I will pay it to the bank.'"    Being asked whether in employing Mr. Benedict this witness was acting as agent for Mr. Davis, he said: "He authorized me to see what I could get the work done for."

Q.  To see what you could get the work done for?

A.  I don't know whether it was for me or for himself. I don't know as the word "you" or "me" was used.

Q.  Who was to pay Mr. Davis for the work?

A.  Why I answered that question just a moment ago, that he was to give a note for $150 when the work was done.

Q.  How was that note to be paid?    Was it to be taken out of the rent?

A.  Why I don't think he said anything about the rent.    I think he said he wanted all the rent money to use for another purpose,—that he could not pay any that month.

Q.  He was to give you a note on the first of the month for thirty days?

A.  Sixty days, and I was to get the money.    *    *    *

Q.  Did Mr. Davis have an understanding with you that he was to pay you in place of paying Mr. Benedict?

A.  I think he was to pay me the $150 on the first of the month,—that is, with either the money or the note.

Q.  You were then to pay Benedict?

A.  Yes, sir;  I was to give him that right away.

Q.  Did Davis authorize you to get the work done?

A.  Yes, sir.

Q.  Authorized you to get the work done?

A.  Yes, sir.

Q. For him?

A. I suppose it was to benefit his property.   *   *   *

Q. Did you have a conversation with him in which he says "I won't have anything to do with anybody except you?"

A. Well, I think he did say he didn't want every Tom, Dick, and Harry running after him; that he thought I should see that the work was being done.

Q. And pay for it?

A. Well, he was to pay me for it, that was the understanding.

In view of the very unsatisfactory nature of the testimony of Mr. Mentor, it seems to us that the court should have allowed the lease to be put in evidence, for thereby it would have been shown that each month there was due from Mr. Mentor to Mr. Davis the sum of $250, and that in addition to these payments Mr. Mentor was required to make all necessary repairs and improvements at his own expense. In the absence of countervailing proof, that afforded by this lease would have been sufficient to justify the jury in concluding that Mr. Mentor procured the improvements to be made at his own individual expense, and in view of the testimony of Mr. Mentor himself, it is not clear that the arrangement between Mr. Davis and Mr. Mentor was entirely without reference to their relations as fixed by the terms of the lease. The district court gave the following instruction:

"6. If you believe from the evidence that the defendant only promised Mentor to pay him, Mentor, or to deduct from rent a portion of the cost of the work, and that it was agreed that the defendant should not be liable to the contractor, then your verdict should be for defendant."

This instruction recognized a contingency which some of the evidence has tended to establish, and as to which, as has been suggested, the terms of the lease might have aided the jury. For the reasons given it seems to us that the lease should have been permitted to go to the jury as

evidence, and there was error in excluding it.   The judgment of the district court is therefore

REVERSED.